PRICE, Judge.
Arthur Young and a co-defendant, Jimmy Glass, were charged with the commission of an armed robbery (La.R.S. 14:64) in Webster Parish on January 5, 1982. Both defendants pled guilty as charged reserving their right to seek appellate review of the trial court’s ruling on a motion to suppress and on a motion to quash. Both defendants •were sentenced to imprisonment for ten years without benefit of probation, parole, or suspension of sentence.
By this appeal Arthur Young seeks review of the trial court rulings on the motion to suppress and on the motion to quash. Glass has abandoned his appeal.
FACTS:
On January 5, 1982, an armed robbery was committed in the Midway Handy Stop in Webster Parish. Two men, one armed with a knife, robbed the attendant of a sum of money and a .22 Magnum pistol. The police were dispatched and arrived at the scene very soon thereafter. The attendant described the robbers as two white males in their late teens or early twenties. She noted that both of the men were wearing blue jeans and that one had darker hair than the other. She further informed the police that the men left on foot traveling north on Arkansas Street.
The Chief of Police proceeded down Arkansas Street in search of the two men. An individual who was walking in the vicinity responded affirmatively when the officer inquired if he had seen two men as described. The pedestrian stated that the men had gone toward a room in the Leving-ston Motel, and that they appeared to be in quite a hurry. The officer went to the motel and asked the owner if he was aware of the presence of these men. The owner advised that two men matching the description were staying in Room # 5, registered under the name of Jimmy Glass. The Lev-ingston Motel is one and one-half blocks from the scene of the robbery.
The Police Chief, accompanied by three other officers, proceeded to Room # 5 *844 where he attempted to open the door with a passkey. He knocked on the door, informed the occupants of his authority and ordered them to open up. Jimmy Glass opened the door and allowed the police to enter. There is conflicting testimony as to whether consent was given to the officers for a search. All four of the officers testified that Glass gave them permission for the search. However, Glass denied this contending that he at no time gave permission for a search of the room. During this time, Arthur Young was asleep or passed out on the bed.
After waking Arthur Young, the officers handcuffed both men and conducted a search of the room upon which they found approximately $20.00 worth of change in coins. Glass and Young were taken to the store for identification by the attendant. After the attendant affirmatively identified the men as the robbers, they were taken back to their motel room where the search was continued. The officers then took the defendants to the police station where they were informed of their rights and booked. The search of the motel room was continued with the assistance of the accused, Arthur Young, who located the knife and revolver. Also, a large amount of money in bills was recovered from the motel room.
ARGUMENT:
The defendant, Arthur Young, contends that the search of the motel room was unconstitutional since it was warrantless, not pursuant to an arrest, and without valid consent. Furthermore, it is argued that the warrantless arrest of the defendant was unlawful. The defendant therefore assigns error in the trial court’s ruling denying his motion to quash the bill of information and his motion to suppress the evidence obtained as a result of the alleged unconstitutional search.
In his written reasons for the ruling on the motion to suppress, the trial judge concluded that “this warrantless arrest and search occurred in the exigencies of hot pursuit.” He found the facts in this case to be similar to those in Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). He also noted that from the time of the robbery until the officers knocked on the hotel door only fifteen to thirty minutes had elapsed. Since the court found that the warrantless arrest and search occurred in the exigencies of hot pursuit, a ruling on the issue of whether the defendants consented to the search was unnecessary.
Exigent circumstances exist where police are pursuing a felony suspect immediately subsequent to the commission of the crime. Where such circumstances exist and where police officers have reason to believe that the suspect entered a particular premises, they may enter those premises, without a warrant, to search for the defendant and for weapons. See Warden v. Hayden, supra; McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948); State v. Dunbar, 356 So.2d 956 (La.1978); State v. Franklin, 353 So.2d 1315 (La.1977), conviction affirmed 362 So.2d 1383 (La.1978); State v. Wyatt, 327 So.2d 401 (La.1976).
Under the facts of Warden v. Hayden, the United States Supreme Court ruled that the police officer’s warrantless entry and search of the defendant’s residence was valid and did not violate the Fourth Amendment due to the exigencies of the situation. The language used by the Court, 387 U.S. at pp. 298-299, 87 S.Ct. at p. 1646, is as follows:
... The police were informed that an armed robbery had taken place, and that the suspect had entered 2111 Cocoa Lane less than five minutes before they reached it. They acted reasonably when they entered the house and began to search for a man of the description they had been given and for weapons which he had used in the robbery or might use against them. The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others. Speed here was essential, and only a thorough search of the house for persons and weapons could have insured that Hayden was the only man present and that the police had control of *845 all weapons which could be used against them or to effect an escape.
In order for a warrantless entry and search to be valid under the hot pursuit exception, the officers must have had probable cause to arrest the suspects before pursuing them into the premises. See State v. Franklin, supra. Probable cause exists when facts and circumstances within the arresting officer’s knowledge and of which he has reasonable and trustworthy information are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing an offense. State v. Tomasetti, 381 So.2d 420 (La.1980); State v. Dunbar, supra.
The facts in the instant case show that the officers had probable cause to arrest the defendants prior to the police entry into the motel room, and that the exigencies of the situation made the entry without a warrant and the subsequent search imperative. The police were immediately dispatched to the scene of the crime, where the attendant informed them of the robbers’ description and of their departure on foot headed west on Arkansas Street. One of the officers, proceeding north on Arkansas Street, came across a pedestrian who advised the police that he had seen two boys matching the description of the robbers enter a room at the Levingston Motel. This officer then proceeded to the motel to inquire of the owner whether two men of the given description were staying there. The motel owner responded affirmatively and added that the men had been acting strange most of the afternoon. He showed the officer a card where Jimmy Glass had registered that afternoon in Room # 5. After checking the room for rear exists, the police attempted to enter with a passkey. When the police announced their presence, Jimmy Glass opened the door and the police entered without a warrant. The motel room is located approximately one and one-half blocks from the scene of the robbery and the police entry into the motel room occurred between fifteen and thirty minutes after the robbery.
Once inside the motel room the police acted reasonably in conducting the search. It was known to the officers that a knife had been used in the robbery and that a .22 Magnum pistol had been taken from the store during the robbery. The search which was conducted was lengthy due to the fact that the officers could not locate the gun or knife. A second search was conducted the next day by two officers with the defendant, Arthur Young, who had consented to assist in the search. According to the officers’ testimony, Young attempted to reconstruct the prior day’s events, thereafter stating that he believed Glass might have placed the weapons inside of the air conditioning vent above the television. The Chief of Police returned to the car to locate a screwdriver for opening the vent, leaving Young in the motel room. Upon his return, he saw Young retrieving the knife and gun from the air conditioning vent which he had opened with a beer can top. Thus, it appears that Young not only consented to the second search, but actively participated in it. It should be noted that even if the defendant had not consented to the second search, it would have been reasonable under the holding of State v. Rhodes, 337 So.2d 207 (La.1976). The court in Rhodes ruled as follows:
Nor was it unreasonable on the succeeding day to search the motel room, the occupancy of which had been terminated by the prior day’s arrest and incarceration of defendant on a fugitive warrant.
In summary we find the seizure of the money was constitutional under the exception of exigent circumstances, and the subsequent seizure of the knife and revolver was constitutional since it was conducted with the consent and assistance of the defendant. The officers had probable cause to arrest the occupants of Room # 5 at the Levingston Motel after they received reliable information as to the suspects’ presence there from two reliable sources. Thus, the officer’s entry into the motel room without a warrant minutes after the felony occurred was valid as an imperative course of action under the exigencies of the situation.
*846 For the foregoing reasons the conviction and sentence of defendant, Arthur C. Young are affirmed.
AFFIRMED.