960 So.2d 369 (2007)
STATE of Louisiana, Appellee
v.
Kevin Joseph SMITH, Appellant.
No. 42,089-KA.
Court of Appeal of Louisiana, Second Circuit.
June 20, 2007.
*370 Thomas & Thomas, by Loyd K. Thomas, Shreveport, for Appellant.
Paul J. Carmouche, District Attorney, John Ford McWilliams, Jr., Brian H. Barber, Assistant District Attorneys, for Appellee.
Before WILLIAMS, STEWART and MOORE, JJ. STEWART, J.
STEWART, J.
The defendant, Kevin Joseph Smith, entered a Crosby plea to the charge of possession of Schedule II CDS, cocaine, in exchange for the state agreeing not to file a habitual offender bill against him and in exchange for a sentence of four years at hard labor. The defendant now appeals. For reasons explained more fully herein, we reverse the trial court's denial of the *371 motion to suppress, vacate the defendant's guilty plea, and remand the case for further proceedings.

FACTS
On March 27, 2006, the state filed a bill of information charging Smith and codefendants, Cornelius Floyd Cage, and Myra Lynn Gary, with possession of Schedule II CDS, cocaine. The state filed its discovery response on March 30, 2006, and a supplemental discovery response on April 18, 2006. On May 22, 2006, Smith's trial date was set for July 24, 2006. On July 11, 2006, he filed a motion to suppress and a motion for speedy trial. On July 18, 2006, the state filed a memorandum in opposition to defendant's motion to suppress. On July 24, 2006, the defendant initially announced that he was ready for trial, but changed his mind and accepted the state's plea offer. The defendant entered a Crosby plea to the charged offense of possession of Schedule II CDS, cocaine, in exchange for the state agreeing not to file a habitual offender bill against him and in exchange for a sentence of four years at hard labor.[1] The state alleged that if the defendant was convicted of the present offense, he would be eligible to be sentenced as a fifth felony offender and would have faced a mandatory sentencing range of 20 years to life in prison.
In pleading guilty, however, defendant reserved his right to appeal the trial court's ruling on his motion to suppress. The trial court had not actually ruled upon the motion to suppress at that time, and the following exchange occurred:
THE COURT: All right, I guess what we will do on the motion to suppress is, we will submit the motion without argument and the briefs, right?
MR. THOMAS: I will submit on the motion and briefs and the reports that are filed into the record, Your Honor.
THE COURT: All right, based on what has been presented to the Court in regards to the reports and the briefs, the Court at this time will deny the defendant's motion to suppress. All right.
MR. THOMAS: Note our objection for the record.
THE COURT: And we will note your objections.
The state offered no other evidence or argument in regard to the motion to suppress. The trial court accepted defendant's guilty plea to the charged offense and imposed the agreed-upon sentence of four years at hard labor. At that time, the state dismissed the charge against the codefendants.
In defendant's motion to suppress, he argued that evidence obtained in a warrantless search of a hotel room and the statement of his co-defendant should be suppressed. In the motion to suppress, defendant alleged: that he was the passenger in a car that was stopped without probable cause or reasonable suspicion at approximately 2:50 p.m.; that he left the scene of the stop; that law enforcement officers did not immediately pursue him; that law enforcement officers were dispatched to Room 237 of the Travel Lodge at approximately 6:30 p.m.; that law enforcement officers learned that he was in Room 137 of the Travel Lodge; that law enforcement officers entered the room without an arrest warrant, search warrant, or consent; that co-defendant Cage attempted to close the door, but officers prevented him from doing so; and, that officers seized the crack cocaine that was inside the room.
*372 In the state's memorandum in opposition to defendant's motion to suppress, the state alleged that the defendant was a passenger in a vehicle stopped due to a traffic violation, which provided the probable cause and reasonable suspicion for the stop; that defendant fled from the scene of the traffic stop to a local motel room; that law enforcement was advised of defendant's location and were immediately dispatched to that location; that a codefendant opened the door, which gave law enforcement the opportunity to see defendant; and, that the cocaine seized was in plain view on a table in front of the defendant.
Contained within the state's discovery response was an offense report, the arrest report for the defendant and both codefendants, rap sheets on all three suspects, and the certificate of analysis from the crime lab showing that the seized substance was cocaine. According to Smith's arrest report and the offense report, Shreveport Police Officer C.T. Hicks made a traffic stop on I-20 at the Spring Street exit, and that Smith, a passenger in the vehicle, fled the scene on foot. Officer Hicks reported that he did not chase Smith because of the traffic and because he had another person in his patrol unit. Officer Hicks reported that he received information that defendant lived in Room 237 of the Travel Lodge on Greenwood Road. Officer Hicks reported that he later received information from headquarters that Smith was actually in Room 137. Officer Hicks reported that when he knocked on the door to Room 137, Floyd Cage opened the door, and he saw Smith inside sitting at a table. Officer Hicks reported that Cage tried to close the door, but that Officer Hicks entered the room because he had "charges" on Smith. Officer Hicks reported that he arrested Smith and that he then saw crack cocaine in plain view on the table directly in front of Smith. Officer Hicks reported that he also arrested Floyd Cage and Myra Gary for possession of cocaine and that Floyd Cage eventually gave a statement indicating that the cocaine belonged to the defendant.

DISCUSSION
Motion to Suppress
The defendant argues that the motion to suppress should have been granted because he was merely an occupant of a vehicle during a traffic stop who fled the scene and who was arrested almost four hours later without a warrant. He argues that there was no exception to the warrant requirement in this case and that law enforcement officers did not have consent to enter the hotel room. Although the room was rented by someone else, Smith argues that he has the right to assert his motion to suppress. Further, Smith argues that warrantless entry of the hotel room warrants suppression of the cocaine found inside the room, even though it was in plain view, because there were no exceptions to the warrant requirement applicable under these circumstances.
The state argues that the defendant's motion to suppress should be denied as untimely pursuant to La. C. Cr. P. art. 521, which requires such motions to be filed within 15 days of arraignment. The state argues that while law enforcement made a warrantless entry into a hotel room where Smith was visiting, his right to privacy was waived when his codefendant opened the door to the hotel room. The state also argues that the stop for a traffic offense gave reasonable suspicion for the stop and warranted the officer talking to the driver and the passenger. Further, the state argues that Officer Hicks had probable cause to arrest Smith without a warrant for violating La. R.S. 14:108, resisting an officer, when he ran away to avoid being *373 questioned. Moreover, the state argues that "hot pursuit" exception applies in this case because law enforcement officers were immediately dispatched to defendant's location when advised of the information. Officer Hicks could not immediately chase Smith on foot due to traffic congestion and due to the fact that he could not leave the other person in his unit unattended. The facts that Officer Hicks immediately saw Smith when Cage opened the door to the hotel room, and the need to apprehend a fleeing suspect provided the exigent circumstances for the warrantless entry into the room. The state argues that the cocaine seized was within plain view after Officer Hicks entered the room and that, therefore, the warrantless search and seizure were lawful. Lastly, the state notes that there was no hearing on the motion to suppress and that the only source of facts is the reports contained within its discovery response.
Timeliness of the Motion to Suppress
According to La. C. Cr. P. art. 703(C), a motion to suppress should be filed within the same time period as other pretrial motions unless certain circumstances exist, but the trial court has the discretion to allow the filing of such at any time:
C. A motion filed under the provisions of this Article must be filed in accordance with Article 512, unless opportunity therefor did not exist or neither the defendant nor his counsel was aware of the existence of the evidence or the ground of the motion, or unless the failure to file the motion was otherwise excusable. The court in its discretion may permit the filing of a motion to suppress at any time before or during the trial.
Article 521 states that all "pretrial motions shall be made or filed within fifteen days after arraignment, unless a different time is provided by law or fixed by the court at arraignment upon a showing of good cause why fifteen days is inadequate." The arraignment was on April 12, 2006, and the motion to suppress was filed on July 11, 2006; thus, the motion to suppress was not filed within the time allowed by statute. Further, the record is silent as to whether the trial court set a different schedule for the filing of motions, and defendant did not allege any cause for why the motion to suppress was filed late. Nonetheless, Article 703(C) gives the trial court discretion to accept filing of a late motion to suppress. State v. Young, 37,673 (La.App.2d Cir.12/05/03), 862 So.2d 312, 320, writ granted in part, writ denied in part, XXXX-XXXX (La.05/14/04), 872 So.2d 505. The trial court did not deny the motion as untimely, and the trial court stated that it was denying the motion based upon what had been presented to it in the form of briefs and the reports contained in the state's discovery response. Therefore, the trial court did not abuse its discretion by considering the untimely motion to suppress.
Burden of Proof and Standard of Review in a Motion to Suppress
In regard to the merits of a ruling on a motion to suppress, it is important to first determine who has the burden of proof. According to La. C. Cr. P. art. 703(D), the state bears the burden of proof when a defendant files a motion to suppress evidence obtained without a warrant:
D. On the trial of a motion to suppress filed under the provisions of this Article, the burden of proof is on the defendant to prove the ground of his motion, except that the state shall have the burden of proving the admissibility of a purported confession or statement by the defendant or of any evidence seized without a warrant.
*374 Therefore, the state bears the burden of showing that probable cause and exigent circumstances justified a warrantless search and seizure. State v. Hemphill, 41,526 (La.App.2d Cir.11/17/06), 942 So.2d 1263, 1271, citing State v. Brisban, 00-3437 (La.02/26/02), 809 So.2d 923. In reviewing the correctness of the trial court's pretrial ruling on a motion to suppress, the appellate court may review the entire record, including testimony at trial. State v. Young, 39,546 (La.App.2d Cir.03/02/05), 895 So.2d 753, 757, citing State v. Sherman, 04-1019 (La.10/29/04), 886 So.2d 1116; State v. Green, 94-0887 (La.05/22/95), 655 So.2d 272; State v. Brooks, 92-3331 (La.01/17/95), 648 So.2d 366, State v. Martin, 595 So.2d 592 (La. 1992). Great weight is placed upon the trial court's ruling on a motion to suppress in regard to the finding of facts because it had the opportunity to observe the witnesses and weigh the credibility of their testimony. State v. Crews, 28,153 (La.App.2d Cir.05/08/96), 674 So.2d 1082, 1084, citing State v. Jackson, 26,138 (La. App.2d Cir.08/17/94), 641 So.2d 1081. Accordingly, this court reviews the district court's ruling on a motion to suppress under the manifest error standard in regard to factual determinations, while applying a de novo review to its findings of law. State v. Hemphill, 942 So.2d at 1271, citing State ex rel. Thibodeaux v. State, 2001-2510 (La.03/08/02), 811 So.2d 875, State v. Jones, 36,553 (La.App.2d Cir.01/29/03), 840 So.2d 7, writ denied, 03-0956 (La.10/03/03), 855 So.2d 309.
Standing to Challenge Evidence Obtained in an Illegal Search and Seizure
The state contends that Smith does not have standing to bring a motion to suppress because Smith was not the renter of the room in question. According to the offense report, the hotel room where the evidence was seized had been rented in the name of Floyd Cage, a codefendant. According to Article 1, § 5 of the Louisiana Constitution, "Any person adversely affected by a search and seizure conducted in violation of this Section shall have standing to raise its illegality to the appropriate court." See also State v. Hawkins, 490 So.2d 594, 598 (La.App.2d Cir.1986). Consequently, the Smith has standing to challenge the search and seizure that occurred in a hotel room rented by his codefendant.
Illegal Search and Seizure
The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Similarly, the Louisiana Constitution provides that "[e]very person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy." La. Const. art. 1, § 5. A warrantless search is per se unreasonable unless the state is able to show that it falls in one of a carefully defined set of exceptions based on the presence of exigent circumstances. State v. Hemphill, 942 So.2d at 1275, citing United States v. Richardson, 208 F.3d 626 (7th Cir.2000). Exigent circumstances may arise from the need to prevent the offender's escape, the need to minimize the possibility of a violent confrontation which could cause injury to the officers and the public, and the need to preserve evidence from destruction or concealment. State v. Hemphill, supra, citing State v. Brisban, supra; State v. Hathaway, 411 So.2d 1074 (La.1982).
While "hot pursuit" and "exigent circumstances" are exceptions to the warrant requirement, in order to justify the warrantless search and seizure, the officer must first have probable cause to arrest *375 the person before pursuing him. State v. Hathaway, 411 So.2d at 1078, citing State v. Franklin, 353 So.2d 1315 (La.1978); State v. Glass, 431 So.2d 842, 845 (La.App. 2d Cir.1983), writ denied, State v. Young, 439 So.2d 1076 (La.1983). Probable cause exists when the facts and circumstances within the arresting officer's knowledge and of which he has reasonable and trustworthy information are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing an offense. State v. Glass, supra, citing State v. Tomasetti, 381 So.2d 420 (La.1980), State v. Dunbar, 356 So.2d 956 (La.1978).
Also, according to La. C. Cr. P. art. 213, a law enforcement officer may arrest a person without a warrant when that officer has "reasonable cause" to believe that the person to be arrested has committed an offense. State v. Hathaway, 411 So.2d at 1078-1079. The Louisiana Supreme Court has previously defined "reasonable cause" similarly to "probable cause" by stating that "[r]easonable cause for an arrest exists when facts and circumstances known to the arresting officer and of which he has reasonable trustworthy information are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime." State v. Hathaway, 411 So.2d at 1079, citing State v. Edwards, 375 So.2d 1365 (La.1979). A police officer's subjective belief that exigent circumstances exist is insufficient to justify a warrantless search; instead, the test is an objective one. State v. Hemphill, supra, citing U.S. v. Richardson, 208 F.3d at 629, U.S. v. Elder, 352 F.Supp.2d 880 (C.D.Ill.01/19/05). Further, warrantless arrests "must be carefully scrutinized to determine if there is in fact probable cause." State v. Hathaway, 411 So.2d at 1079.
Because the state and the defendant submitted the motion to suppress on the briefs and stipulated to the facts contained within the arrest reports and offense report, there are many facts missing for evaluating the actions of law enforcement in this warrantless search and seizure. Although the defendant's arrest report and the offense report indicate that Shreveport Police Officer C.T. Hicks made a traffic stop on I-20 at the Spring Street exit, there is nothing in those reports to indicate the reason for the traffic stop and there is no sworn testimony to provide that information. The reports do indicate that Smith was not the driver of the vehicle, and that he fled the scene of the traffic stop on foot. The offense and arrest reports do not contain any other information regarding what transpired during that traffic stop. The offense and arrest reports indicate that Officer Hicks entered the hotel room after seeing defendant inside because he had "charges" on the defendant, but there is no information regarding the nature of the charges justifying the warrantless entry into the hotel room.
Even if this court were to assume that there were facts justifying the traffic stop, there are no facts explaining the probable cause or reasonable suspicion Officer Hicks had to justify an arrest of the defendant for any offense. The defendant's arrest report indicates that "flight from an officer" pursuant to La. R.S. 14:108.1 was originally listed as one of the offenses for which defendant was being arrested, but then it was scratched out. According to the statutory language of La. R.S. 14:108.1, only the driver of a vehicle intentionally refusing to bring a vehicle to a stop after being signaled to do so by law enforcement may be prosecuted for this offense. Because the reports indicate that defendant was a passenger and not the *376 driver, there could have been no probable cause to arrest for the offense of flight from an officer.
On appeal, the state argues that the stop for a traffic offense gave reasonable suspicion for the stop, which warranted the officer talking to the driver and the passenger, and that Officer Hicks had probable cause to arrest defendant without a warrant for violating La. R.S. 14:108, resisting an officer, when he ran away to avoid being questioned. In State v. Knowles, 40,324 (La.App.2d Cir.12/30/05), 917 So.2d 1262, this court addressed a similar factual situation where the defendant had been a passenger in a vehicle that was stopped and searched. The officer was intending to conduct a pat-down search of the defendant when he fled. After the officer chased and apprehended the defendant, the officer arrested the defendant for resisting an officer. State v. Knowles, supra. In that case, this court stated that it is essential to a conviction for resisting an officer for the defendant to have had knowledge of his arrest or impending detention. State v. Knowles, 917 So.2d at 1273, citing State v. Nix, 406 So.2d 1355 (La.1981), State v. Hines, 465 So.2d 958 (La.App. 2d Cir.1985), writ denied, 467 So.2d 536 (La.1985). In State v. Knowles, supra, this court ultimately concluded that the defendant could not be convicted of resisting an officer because he was not under arrest at the time he fled. In the present case, the reports do not indicate that the defendant was under arrest at the time he fled the scene of the traffic stop. Thus, from the face of the reports alone, there is no information supporting reasonable suspicion that the defendant should be arrested for resisting an officer. Further, there is no information contained in these reports that would support a finding of reasonable suspicion or probable cause that defendant should be arrested for any other offense.
Further, although the reports indicate that the defendant fled the scene of the traffic stop, the Louisiana Supreme Court has previously held that flight, alone, is not sufficient to establish probable cause:
The fact that a person runs or flees does not in itself and of itself establish probable cause. Flight does not always indicate guilt; it may result from fear and possibly other causes. Even where flight does reasonably appear designed to avoid apprehension, reasonable cause will not arise unless flight, combined with other information upon which officers are entitled to rely, would indicate to a reasonable mind that the combination of circumstances is inconsistent with any innocent pursuit. State v. Franklin, 353 So.2d 1315 (La.1978), conviction affirmed, 362 So.2d 1383 (La.1978).
State v. Hathaway, 411 So.2d at 1079.
It may be that there were facts present to justify a hot pursuit of defendant; however, the necessary facts were not present in the arrest and offense reports and the state failed to present the testimony of Officer Hicks in order to present the necessary facts. There are no facts contained within those reports to show for what offense the officer had reasonable cause or probable cause to arrest defendant. In addition, there were no facts contained in the record to show how the time delay between the traffic stop and arrest could qualify as an actual "hot pursuit." As a result, the state failed to meet its burden of proof to show that there was probable cause to arrest the defendant in order to justify Officer Hicks's "hot pursuit" of Smith.
The crack cocaine found directly in front of Smith inside the hotel room was found in "plain view" of Officer Hicks. Even so, the warrantless seizure of an item that comes within plain view of an officer is *377 only justified if the officer was in a legitimate position to view the item. State v. Hemphill, 942 So.2d at 1276, citing Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), State v. Guiden, 399 So.2d 194 (La.1981), cert. denied, 454 U.S. 1150, 102 S.Ct. 1017, 71 L.Ed.2d 305 (1982). Regardless of whether there was a legitimate "hot pursuit" of the defendant, Officer Hicks did have the authority to knock on the door of the hotel room because law enforcement officers have the same right as the general public to approach the entrance to a home. State v. Stephens, 40,343 (La.App.2d Cir.12/14/05), 917 So.2d 667, 674, writ denied, 06-0441 (La.09/22/06), 937 So.2d 376. However, the offense and arrest reports indicate that Officer Hicks entered the room without consent because he saw defendant inside the hotel room and because he had "charges" on the defendant. As discussed above, no facts were presented to substantiate that claim in order to justify the officer's warrantless entry into the hotel room. Further, the offense and arrest reports indicate that Officer Hicks did not observe the crack cocaine until he was inside the hotel room. Thus, for the reasons discussed above, Officer Hicks was not in a legitimate position to view the crack cocaine at the time he observed it. Therefore, the plain view exception does not apply in this case. Had Officer Hicks observed the contraband from the doorway, the plain view exception would have applied because he had a legal right to knock on the door and observe whatever was before him from that vantage point; however, the arrest and offense report do not indicate that to be the case. Therefore, this assignment has merit.
In State v. Crosby, supra, the Louisiana Supreme Court determined that the appellate courts may review assignments of error specifically reserved at the time a guilty plea is made and "where the trial court accepted the guilty plea so conditioned." 338 So.2d at 588. The court noted that refusal to consider the assignment of error specifically reserved for appellate review at the time of the guilty plea renders the guilty plea involuntary due to nonperformance of the plea bargain. State v. Crosby, 338 So.2d at 586; see also State v. Joseph, 2003-315 (La.05/16/03), 847 So.2d 1196. In State v. Crosby, supra, the court discussed the benefit of allowing such guilty pleas in regard to judicial economy, stating that "[t]he functional purpose involved is to permit a fair and efficient method to review a central issue of a trial and a prosecution, in instances where the pre-plea ruling, if erroneous, mandates a reversal of any conviction that may result." In State v. Ledford, 40,318 (La.App.2d Cir.10/28/05), 914 So.2d 1168, the defendant pled guilty pursuant to State v. Crosby, supra, and reserved for appellate review the denial of his motion to suppress. After finding that the motion to suppress was improperly denied, this court reversed the trial court's ruling on the motion to suppress, vacated the defendant's guilty plea, and remanded the matter for further proceedings. State v. Ledford, 914 So.2d at 1170. Accordingly, because the motion to suppress was improperly denied in the present case, we reverse the trial court's denial of defendant's motion to suppress, vacate the defendant's guilty plea, and remand this matter for further proceedings.

CONCLUSION
For the foregoing reasons, we reverse the trial court's denial of the motion to suppress, vacate the defendant's guilty plea, and remand the case for further proceedings.
REVERSED, VACATED, AND REMANDED.
NOTES
[1] State v. Crosby, 338 So.2d 584 (La.1976).